Good morning, Your Honors. May it please the Court, I am Jonathan Freiman on behalf of Navigators. Your Honors, the central issue in this appeal is whether the Folger lawsuit filed against AverHealth in 2022 is related to the Gonzales lawsuit filed against AverHealth in 2021 under the terms of the Columbia policy that was issued to AverHealth. Now, as this Court recognized in the Miller case 10 years ago, the definition of related claims in this policy is expansive. And it's expansive in three ways that are relevant to us here today. First of all, it defines a related claim as all claims arising out of related acts, errors, or omissions. And then second, it defines related acts, errors, or omissions as all acts, errors, or omissions in the rendering of professional services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice, or decision. And then third and finally, as to timing, the policy says that all related claims, whenever made, shall be considered a single claim. Now, the Gonzales and the Folger cases easily meet that broad definition of related claim. They are logically and causally related, not just by any common fact, but by many common facts. Same testing errors at the same Missouri facility, within the same time frame, due to the same alleged methodological deviations from lab testing methods, causing the same kind of injuries, loss of access to children. Many of those allegations were, in fact, word for word, identical. And when the Folger case was cited, counsel— Right. So where do you think the district court went wrong here? The district court went wrong, Your Honor. First of all, the district court didn't have the advantage of the Under Armour decision, which came down afterwards, which looked at the same language. But I think the district court erred in any event because it didn't do what Under Armour asks to do and what is generally to be done under Virginia law when interpreting a contract, including an insurance policy, which is to look at the specific language of the policy. What the district court did instead is it applied a kind of general equitable balancing test. It looked like a common law test you might see in different areas. We're going to see how many similarities there are, how many differences there are. We're going to weigh in. We're going to say, does the scale tip in one way or another? But that's not what the language that Columbia chose to use here asks for. It just asks, are they logically or causally related by any common fact? Treating this as a kind of common law balancing test, an equitable balancing test, was a methodological mistake that the district court made. And this court ought to reverse after applying the analysis required in the binding published decision in Under Armour, which is consistent with the decision in Miller 10 years prior. And both of those decisions dealt with very similar policy language with regard to related claims provisions. In Under Armour, they say it was because it's a scheme. And so that's why they are related. I think same parties, there's this common scheme. But here, you have different parties. The plaintiffs here were not related to the plaintiffs in Under Armour either. So in terms of the first part of that related claim in Under Armour, we had plaintiffs who had brought derivative suits and they were claiming at that time that there had been two rosy predictions about the financial future of Under Armour and that there was insider trading going on. Then when the government got involved, the SEC and the DOJ, they started by looking at those things, but then they changed. And they looked at the accounting tricks that the company was playing, the pull forwards, the pull backwards, and all of that. So that was a different kind of claim that they were looking at, and ultimately that resulted in a different kind of settlement with Under Armour. But it was also, importantly, a different party that brought the claim. It was the US government instead of Mr. Brees, who had brought the, I believe, the first or the second derivative demand. So we had different people, we had different claims, but they were related. Because Under Armour did, in fact, right, it did find that there was a single scheme, just like here, there's an allegation that there was a single scheme to prioritize speed over accuracy of the results. But that's not what determines whether they're logically or causally related. What determines whether they're logically or causally related is when you look at the facts, you look at the allegations, and you see, are they? And here, I mean, you saw, we put it for you in the brief, page by page of identical allegations. And, you know, going back to what I said, it's the same Missouri facility, the same allegations of deviations from standard laboratory testing procedures approved by the College of American Pathologists. The same stuff, you know. Actually, there's a connection to Under Armour, which is they backdated the use of calibration curves in this suit instead of backdating their profits. The similarities are so striking. You don't need to have the exact same plaintiffs. But when this case was filed, when the Folger case is filed, counsel marks it as related to Gonzales. It's marked as related. You see it on both ends. You see it on the Folger end, and then you saw it to begin with on the Gonzales end, because in the Gonzales end, they said, oh, we have a class action here. Now, that never got resolved, but they said, we have it, and so we're pleading that these are common questions of fact for everybody who had to deal with that. When you say counsel marked it as related to the other one, where, like in the docketing or in the... Yes, that's correct, in the district court, Your Honor, and I can give you the page in the joint appendix for that. If you turn to page 295 of the joint appendix, you'll see the original filing form which counsel for Folger filled out, Richard Kornfeld, and you got three boxes you can choose in this district court. One is that it's the same case. The other is that the case is related, and the other is neither, and it shows the case is related. That's what the counsel chose. I get back to what Your Honor said in the last argument, which is if it quacks like a duck, it probably is one. Page by page, marked as related, first counsel and second counsel both said, we're talking about the same thing. You have all of these sames. I think this is much more similar than Under Armour. It doesn't need to be more similar than Under Armour, but it is, and the language here is broader than the language of the policy in Under Armour was, too, because here we have that any fact, circumstance, et cetera, any logically or causally connected fact. There wasn't the any in Under Armour. I guess based on your argument, all cases would be related, I guess, under that definition of any common fact. All cases that have this kind of similarity in the allegations. As Under Armour made clear, the limitation here, we can imagine extremely attenuated situations. The only similarity in the claim is, oh, it was brought against Averhealth. Well, that's probably not enough to meet the requirement that it be logically or causally connected. I guess what I'm asking, so if Averitest, 10 years from now, has some similar claim with false testing, where the facts are similar, at what point, because of the related back clause in there, at what point is there a temporal limit do we say it doesn't relate back to Columbia? There's not a temporal limit in the policy language, Your Honor, but I think in the real world there is, because here what happened, if you look at the second amended complaint in Folger, is the state of Michigan stopped using Averhealth tests because of these methods. Everybody was washing their hands of these kinds of methodological problems. Averhealth ultimately changed, so this stuff didn't continue. The other practical limitation is the statute of limitations that underlying plaintiff's counsel would have. They're not going to bring a claim that's too old because they want to make their contingency cut, so that's not going to happen, but fundamentally what's happened here is Columbia has made a choice. They've made a choice to put in their policy, whenever made. They haven't limited it, and there's policies, that policy out in the California case that the other side cites. They don't have that whenever made language, and so the California court said, well, then it's not whenever made, but if you have the whenever made language under Under Armour, we need to apply that. Now that's a choice that insurance companies make in the marketplace. They make that choice because they know they're providing broader coverage. They know that companies that are purchasing these policies can in fact have that advantage of having the ongoing coverage, and you know there is an irony here. And the limits. Absolutely, and the limits, Your Honor. Absolutely, and the limits, right? There's a million dollar limit on this policy, so a million dollar per claim limit, a three million dollar aggregate, so if these are a single claim, there's a one million dollar limit. Twenty years from now, I mean, it's all going to be gone. It'll all be gone a long time. Maybe sooner than twenty years. Maybe it already is. The settlement here was confidential. It's not part of the appellate record, and I don't know what it was, so I have no idea, but yes, sure. So there are all kinds of advantages to insurance companies in making this kind of language, and I'm going to point out something ironic. If you look back at both Miller and Under Armour, arguing the other side of this issue was the Continental Insurance Company, which is a corporate affiliate of Columbia. They're both part of the CNA family of insurance companies. They have the same policy. In fact, arguing counsel in Under Armour was representing Continental, even though it's captioned Navigators. It was representing all of the insurers in that case, and you know, their claim there was clear. It was, this is a related claim, even though we're beyond the policy period, because it says what it says, and you have to read the policy. And they won those two cases correctly. They're taking the opposite position here, and it should be reversed. They shouldn't get to have it both ways, because they're wrong this time. They were right those two times. If there are no further questions, I'll reserve the remainder of my time for   May it please the Court. The fundamental error that Navigators has made in relying on the Under Armour opinion is the way that my colleague started, and that is that this has to be analyzed under the terms of the Columbia policy. That is exactly not what the Under Armour opinion did. And as is clear here, the Under Armour opinion came out on the very same day that the appellees filed their briefs here. So we didn't have the opportunity to address that. Of course, Columbia would welcome an opportunity for supplemental briefing addressing Under Armour, if that would help the Court. But I think I can address it now. What the Court did in the Under Armour opinion was look at the language of the policy in place at the time that the claim at issue was being made. In that case, it was the SEC claim that was made in the later policy period. The Court looked at that language to see, does that policy mean in its language that the claim before us now was made previously? So what we have to look at here is the Navigator's language about what a related claim is. And in the Navigator's policy, the related claim is the same acts, errors, or omissions. That's what we look at. Are the acts, errors, and omissions alleged in the Folger case the same acts, errors, and omissions that were alleged in the Gonzalez case? In the Under Armour opinion, the Court said, let's look at what are the dictionary definitions of an act, an error, or an omission. And when you look at those, an act is an act. It's doing something. An error is having done something mistakenly. An omission, having failed to do something. So we have, are the acts, errors, and omissions the same in Folger as they were in Gonzalez? And I was struck by Judge Thacker's question in the argument just before us about events and outcomes. Testing a sample is an event. It's an event that has many, many components from the stage of detection to the stage of reporting. All of those components are subject to myriad acts, errors, or omissions that may affect the outcome. Each of them. But it still boils down to the testing. And I mean, the language I was looking at was, are these lawsuits logically or causally related? And they seem to be, to me. Why are they not? Well, first, Your Honor, as I just said, that's the language in the Columbia policy. And what the underarm opinion says is, that's not the language you look at. You look at the language in the policy when the second claim was reported, and that's Navigator's. But even if you are looking at the Columbia language of logically and causally related, what you're looking at there is, does the, do the alleged inaccurate test results in the eight plaintiffs in the Folger case result as a natural consequence of the inaccurate results that occurred in the two Gonzales plaintiffs? What the cases both allege in a general sense are . . . But it seems to me that, not looking at the result, that the actual testing procedures and the aftermath of that are logically and causally related between the two lawsuits. And here's why they're not. Because there aren't allegations in these about any specific individual testing procedure that resulted in exactly the same inaccurate result each time. The generalities of the allegations are that there was speed, there was manipulated data, there were inaccurate internal standards, there were inaccurate calibration curve data, and there was quality control issues. And that's in both cases? That's in both cases. That's the generality. That's the general business strategy that the plaintiffs were claiming Aberhelst was engaged in. But any one or more of those may or may not have occurred in any one test if they were all the exact same. We heard again, it was the same testing errors at the same time, the same methodology. If that was true, every single test conducted by Aberhelst would have been wrong. Every one. And the plaintiffs, particularly in the Folger case, there is an allegation by Mr. Tulloch in the Gonzales case, that one of his test results was, in fact, accurate. But in the Folger case, you have several allegations among the plaintiffs that there were many correctly reported test results. There were some that were inaccurate. If it was, in fact, the same flaw, the same test, the same error every time, everything would be wrong. They're inherently different. But it doesn't have to be the same. It just has to be logically or causally related. And we cannot identify that they are logically or causally related. It's not their class actions. I apologize. We cannot identify that if we can't identify what it is exactly that was done wrong in any given case. That's what's not logically and causally related. They are not logically related, as the Under Armour opinion said, because it doesn't naturally flow in. Under Armour, as Judge Benjamin identified the scheme, they were the same pieces of plan there. And you, as navigators, argue that they were related in Under Armour. Yes. Well, in Under Armour, the same pieces of the plan were, we are going to decide on a couple of methods by which we achieve a specific result. The specific result is making everyone believe we have 20% growth. I'm just saying that that's the same thing here, that this method of rushing, I guess, or speeding through testing results, so I guess they would be able to process more tests, is similar to the scheme in Under Armour, which you argue was related. But what we're saying . . . So I did not . . . I mean, not you . . . I was not involved in those cases. I did hear and I apologize if Mr. . . . Well, I mean navigator, when I say you. Understood. But I represent Columbia here, and the position that Columbia is taking has been different under the facts of many cases. This ACNA company is a better way to put it, under the facts of many cases. But here, just as you just described, speed. They were rushing through, so speed was the problem. Speed alone is an amorphous statement. The speed means . . . And there's no allegation of what that meant in any . . . in either Gonzales or Folger. Instead, it says we prioritize speed over accuracy. And then it says some of the ways that that happened are these manipulated data or internal standard inaccuracies or calibration curve data inaccuracies or quality control inaccuracies. Well, what was it in any given case? Those are possibilities. They are not the same error. They are not the same flaw. They're not the same testing error that led to the same result every time, that had the same goal. This is, as the Under Armour opinion says with regard to Purdue Farms, a level of generality that would mean any conduct by that company is the same conduct. That level of generality without specific factual results of the same outcome cannot be logically or causally related. Nothing about what happened with the Gonzales or Tullock testing of those individual, multiple individual samples, caused the individual multiple samples being right or wrong, and they were sometimes right and sometimes wrong, according to the allegations in any of the Folger plaintiffs. They are not logically and causally related because they don't flow from that. They flow from something, but the something is that marketing strategy. It is that marketing business. The Under Armour case specifically said that what you have to have is that scheme. You have to have that same goal. It is the same conduct making the same goal, and what we have here is not conduct. What we have here is theories about what might have occurred with each one of them. Indeed, in the two cases, because there's only one in the Gonzales case, sorry, there are three, one in the Gonzales case and two in the Folger case, where a plaintiff came close to alleging something specific had happened. In the Gonzales case, I apologize, there's no specific allegations from either Mr. Gonzales or Mr. Hullock. In the Folger case, the plaintiff Folger said, and this was highlighted in the navigator's brief here, that her test result was alleged to be from unreliable procedures or they mistakenly reported not her sample. That by itself are two entirely different things, that they tested not her sample or that they tested her sample but used some unidentified unreliable procedure. Mr. Schnitzer in that case alleged improper collection. That's the only factual thing he alleges is improper collection, not improper testing, not any of the manipulation of data or internal standards or calibration curves, but improper testing, improper collection. That by itself means these are entirely inherently different claims. I would also like to address that even if these are related and they're not, and I think that the district court reached exactly the correct conclusion there, one of the things that navigators addressed was that the district court looked at the differences between them. Differences and similarities cannot be looked at in isolation. They are interdependent. As soon as you start looking at those, what you have to start looking at is differences grows as you start to see unique features. Every one of these plaintiffs has unique features of what went wrong and that's not alleged for any of them except for the two I just mentioned. Improper collection for one and one might have been an unreliable testing procedure, might have been they tested somebody else's sample and attached it to her. That's sloppiness. It's sloppiness in implementation. What it's not is an allegation of the same act over and over again. But even if you have those related claims, that doesn't mean that the claim is still covered by the Columbia policy, the Folger claim that is because the Columbia policy inherently unambiguously says that a claim is going to be covered as a condition precedent only if it is made and reported during the coverage relationship. It was not made and reported during the coverage relationship. The whenever made that navigators phrase that relies upon is within the limitation of liability part of the policy. But even that in reading the policy as a whole has to be read within the phrase the coverage relationship. Whenever made within this policy period, it's got to be made within this policy period and the next policy period, which are the coverage relationship. You can't simply say, well, this case was is a related case to that one by all of the factors that we've addressed. And so that makes a covered if it's not covered by other terms of the Columbia policy. And so if so, if this was this was found, um, during the time of the Columbia policy, you would not be arguing that they were, um, Columbia would absolutely still say that they are not caught, that they are not the same claim. They are not. They are not the same. And they would not be causally related. And they wouldn't be subject to one policy limit. It would. Then that would be a different analysis. And you'd be looking at if they are not causally related. They are a separate. It is a rights and duties and obligations within the policy period. The fact that both these cases allege that, um, speed was prioritized over accuracy that that isn't sufficient to make these related. It's not because that's a concept. It's not an action allegation. It's it's an allegation of a concept. It's not an allegation of an act. The act is that they prioritize speed over accuracy of results. And that led to needless false positives. And that's in both cases. The Columbia policy defines all of this comes to. It has to be an act error remission in the rendering of professional services. Rendering of professional services is further defined as actually providing some service to a person. So that has to be the actual test, right? That should be the actual test. Prioritizing speed over accuracy is a concept, not an act prioritizing speed of what? That's what that is. That is what we don't. That's what we don't know. That's exactly what's not alleged. If, for instance, there was an allegation that, um, for every test, there was a rule that it had to be finished in 24 hours. And then there's an allegation that because every one of these was done in 4 to 24 hours, here's exactly the flaw that happened with that. That would be similar to the Under Armour scheme. That would be more similar to the Under Armour scheme. But that's not what's alleged here. Let me give you an analogy. If you know there's up in the D. C. Metro area, the DMV, as it's called. So assume you have a radiology clinic and all sorts of there are four radiological exams. You have a doctor in Maryland who misreads a mammogram. You have a doctor in D. C. who misreads a fetal sonogram. And you have a doctor in Virginia who misreads a lung X-ray. Now, why did this happen? Because the radiology says, as they're marketing, we prioritize speed here. We prior. We have two shifts of doctors. There's a 8 to 4 shift, and there's a 4 to midnight shift. And so now the allegation is, well, all of those were read incorrectly. Because the doctors on the second shift, they all happen to be doctors on the second shift, and they were tired or careless or overworked. Does that mean that every one of those inherently, exceptionally different readings of a radiological exam are related to one another? Of course they're not. They are absolutely not related to each other. They are independent, professional events in which a doctor made an error. And that's what we have here. We have claims of these various plaintiffs where somewhere... Aren't these class actions? These are class actions, right? The Gonzales case was filed as a class action. It never even got to motions or discovery or class certification. The Folger case was not filed as a class action. Okay, thanks. Any other questions? Thank you. Thank you, Ms. Warren. Mr. Johnson? Good morning. May it please the Court. My name is Hal Johnson, and I am counsel for Avertest, LLC, which is the policyholder that's caught in the middle of this fight between two insurance carriers, both of whom are trying to wriggle out of cover in the Folger claim. Because we are in that posture, and this is primarily a dispute between the carriers, I've only got three minutes of time and I will largely stand on the arguments in our brief. In the brief, we set forth that we're largely agnostic as to where the court draws the line in interpreting these related claims provisions, whether Folger and Gonzales are indeed related or not. We also address the alternative argument that Ms. Warren just made, in which Columbia claims that even if Folger is deemed related to Gonzales, it falls outside of Columbia's coverage relationship, and therefore Columbia would not have an obligation to cover it. That argument cannot be reconciled with the plain language in Columbia's related claims provision, which states that related claims, whenever made, not if made during the coverage relationship, but whenever made, will be treated as a single claim that dates back to the first filed lawsuit, in this case Gonzales. Lest there be any doubt about Columbia's ability to craft appropriate language, I encourage the court to look at, and this part is not in our brief, to look at the notice of potential claim provision in Columbia's policy. This is at the Joint Appendix, page 52, because in that provision, Columbia says if during the coverage relationship, an authorized insurer becomes aware of an incident that could lead to a claim, and notifies Columbia during the coverage relationship, then a claim, a later claim, whenever made, would still be covered under the policy. So there's no way for Columbia to square the plain language of their policy with the idea that if these claims are indeed related, it would have no obligation to cover it. I'll end, Your Honors, with just the fundamental point that Avertest did everything it's supposed to do in terms of buying insurance, maintaining continuous insurance without interruption, without a gap in coverage, throughout the entire period that these claims arose. There is no dispute that the allegations in the Folger lawsuit are the types of claims that fall within the broad scope of coverage of these professional liability policies. And under those circumstances, it would be grossly unjust if Avertest were left bare without any insurance coverage at all for the Folger claim. In preparing for today's argument, if you go back and read the briefs, there are a lot of cases cited involving two insurance companies that issued successive claims made policies fighting over a related claims provision. But I'm not aware of a single case in that context in which the policyholder was left exposed to uninsured liability, having bought this insurance from two different companies. Unless the Court has any questions, I'll I'd like to, well, first of all, I'll acknowledge that this is probably the first time I've come up on rebuttal as an appellant and find myself in agreement with what the last few minutes of folks at the other table said. But getting back to the actual specifics of what Your Honors need to analyze, the notion that we ought not to look at the Columbia policy is misguided. Just taking a step back, this is a claim where navigators tendered the defense and indemnification to Columbia because of Columbia's policy obligation. Columbia said, nope, we're not going to cover it. And then we sued. That's what we're fighting over. We're fighting over the responsibility for that. So of course we have to look to see whether under the Columbia policy it's covered. I'll say in addition to that, as we noted in our briefs, the navigators policy has a very specific exclusion, exclusion Y, which says if the claim was covered under another policy of insurance, then we don't cover it. So you also need to decide the Columbia issue for that reason as well. So you definitely do need to look at the Columbia policy. Getting that out of the way, I think, you know, I felt a little bit like I was walking into another universe when I heard the description of the underlying complaints from my colleague opposing counsel. And I think the reason it felt like a different universe is because opposing counsel was not looking at what the language asks for, which is whether these two suits are connected logically or causally, connected by any common fact. She was looking at whether they're connected by all common facts. She was saying, well, okay, there's testing claims, but there was also a claim about collection. Well, that's true. No one can dispute that, but that's not what the policy asks. The policy doesn't say set up the two lists of all the allegations. Every single one of them has to match. That's not what we're talking about here. You could write a policy that narrowly if you wanted to. You could say the only kind of claim that is related is one that could have been added if you were amending the existing lawsuit or something like that. You could say something far more restrictive than what Columbia in fact said. But what Columbia said is logically or causally related by any common fact, circumstance, etc. I think I've made clear that there were so many here. There was the fact that it's the same testing facility in Missouri that led to false positives because of very specific methodological errors involving ignoring College of American Instead, just picking something out of the past and saying, we'll use this for our standard. We'll use this for our model. Well, that's one method across the board. Could every plaintiff have proved that if they all went to trial before a jury? I don't know, but we never know when a claim is brought. When you're assessing coverage, you look at what the allegations are. And the allegations here are that there were all of these same methodological errors leading to the same problem, people being given false positives that led to the same injury, loss of access to their children. It's very difficult given that and given the fact that in the Gonzalez suit, they thought they were speaking initially until they ended up settling for a Y group of people because these questions were common and predominated. And in the Folger suit, counsel thought this case was related. We have every indicia of relatedness you could look for on this record. And I think it is very clear under Under Armour and under the language of this policy that these are related claims. I want to turn my attention for a moment to one other issue, which was the issue of timing. Counsel was suggesting that because the second part of this claim occurred after the end of the policy period, that is after the coverage relationship had concluded, well, it couldn't count. Counsel from our health noted that they know how to say that when they want to and they didn't say that here. They said it in another part of the policy. And I will draw your attention back to that underline it, if you will. That's on JA 52 of the joint appendix, as opposed to the portion that we're looking at here, the relevant portion here, which I believe, and I'm about to clarify, is, yes, JA 74 of the joint appendix. In that, it says, all related claims, whenever made, shall be considered a single claim. Okay, so that's one claim. Both suits, if I'm right about relatedness, both suits, Gonzalez and Folger, are a single claim. When was that claim made and reported? When Gonzalez was made and reported, the first part of that single claim. What was the policy period? The 2021 policy period, which was insured by Columbia. So there's no problem on the timing, that's just a distraction that, again, is ignoring the plain policy language that Columbia chose. If there are no further questions, I thank your honors. I guess I'm not trying to rephrase what Ms. Ward said, but it came up, I thought about, in terms of at a trial, if you were just to prove at the trial that they were using expediency, or whatever, over being careful, and that's all you proved, and not facts related to exactly what they did, that wouldn't be enough with it. If all this expediency, that they were interested in, you know, profit over time, or that kind of thing like that, at the expense of the safety of persons, no matter how much you did that rail at a trial, wouldn't at the end say, yeah, that's very fine, that may be their intent, that may have been a philosophy, but until you show that they actually did something, facts, wrong, right, wouldn't you have to have facts? Your honor may be right, that is unexplored territory, that's not something that courts have looked at under this policy language, and I think a court would have to determine how much of a limitation, the logically or causally connected part of the policy, determine there, but one important thing is the question of where we are in the procedural history, right? So if you got, let's say, let's say that I agreed with your honor, for the sake of making this clear. If we got to that point, and we had a jury verdict sheet, or something like that, and they marked off, you know, the one and not the other, and so it was very clear to us, and we knew that. Well then, maybe it would be the case that there wouldn't be a duty to indemnify for a verdict, because maybe you would deem at that time, it was no longer a related claim. But you have to assess it, as always in a coverage dispute. You have to assess it based on the record that comes into the court at the time. Now these cases didn't go to trial, right? So these cases settled. So what we have is the record of the allegations that are in the joint appendix. And we know from those allegations that what the plaintiffs were trying to do, and what they said was true. Whether it is or isn't, I don't know. But what they said was true, what they alleged was all of these very specific commonalities that are logically and causally related as between Folger and Gonzalez. And you allege the same actors, or just the same company, or the same philosophy? Somewhere in between the two, between the same actors and the same company, they allege the same single laboratory in Missouri. The same single laboratory. A location. Yeah, one lab, one lab. So this is not a case, as opposing counsel had it, of different radiologists in different places. This is one lab with one set of practices, one set of policies, one set of procedures, deviating from the established practices over and over again. And we maintain that that's far more than enough for a related claim. All right, thank you, Mr. Clerk. Thank you, Counsel. We're going to ask the clerk to adjourn the court until tomorrow morning. And then we'll come to the group council. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Stephanie D. Thacker, DeAndrea Gist Benjamin